**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(GREENBELT DIVISION)**

| | | |
|---|---|---|
| In re:<br><br>RAJA MOHI-UD-DIN,<br><br>Debtor. | ) | Case No. 26-14436<br><br>Chapter 7 |
| KAPITUS SERVICING, INC.,<br>as authorized sub-servicing agent<br>of Kapitus LLC,<br><br>Plaintiff,<br><br>v.<br><br>RAJA MOHI-UD-DIN,<br><br>Defendant. | ) | Adv. Pro. No. _______ |

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT OWED TO KAPITUS SERVICING, INC.**

Plaintiff, Kapitus Servicing, Inc. as authorized sub-servicing agent of Kapitus LLC ("Kapitus"), by its undersigned attorneys, files this Complaint under Section 523 of Title 11 of the United States Bankruptcy Code, hereby files this Complaint: (1) requesting a money judgment against Debtor/Defendant, Raja Mohi-Ud-Din (the "Debtor") and (2) objecting to the dischargeability of a pre-petition debt owed to Kapitus, and in support thereof alleges as follows:

**JURISDICTION AND VENUE**

1. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is brought pursuant to 11 U.S.C. § 523(a) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2. This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334.

3. Venue is proper pursuant to 28 U.S.C. § 1409(a).

4. If the Court finds that this is not a core proceeding, Kapitus consents to entry of final judgment by the Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.[1]

5. This Adversary Proceeding is brought in connection with the bankruptcy case filed by the Debtor under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") as Case No. 26-14436 (the "Bankruptcy Case").

6. Pursuant to the *Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline*, August 3, 2026 is the deadline for Kapitus to file a complaint under 11 U.S.C. § 523(a). *See* Case No. 26-14436, ECF 9. This Complaint is timely filed.

**PARTIES**

7. The Debtor is an individual residing in the State of Maryland at 10019 Kendale Rd., Potomac, Maryland 20854. *See* Case No. 26-14436, ECF 1.

8. Debtor is or was, at all relevant times, an owner, officer, director, member, and/or manager of Raja M. Din, M.D. PLLC ("Borrower") and made decisions and statements on behalf of Borrower to Kapitus relevant to the issues herein.

9. Kapitus is a Virginia corporation with principal offices located in Arlington, Virginia and in New York, New York.

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Kapitus' rights, defenses and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

10. Service may be obtained on the Debtor by mailing a copy of the summons and complaint to the Debtor at the address shown in his petition and by service, by first class mail, on Debtor's attorney pursuant to Rule 7004(b)(9) and (g) of the Federal Rules of Bankruptcy Procedure.

## FACTS

### I. Transaction Documents

11. Pursuant to that certain *Loan Agreement* dated November 24, 2025, and related *Security Agreement* and *Guaranty* (collectively, the "$60,000 Agreement"), Kapitus loaned $60,000.00 to Borrower. True and correct copies of the documents that comprise the $60,000 Agreement are attached hereto as **Collective Exhibit A**.

12. Pursuant to the terms of the *Guaranty* executed in connection with the $60,000 Agreement, the Debtor personally guaranteed Borrower's payment and performance of all representations, warranties, covenants, and obligations under the $60,000 Agreement. Coll. Ex. A, (Guaranty).

13. Pursuant to that certain *Loan Agreement* dated January 29, 2026, and related *Security Agreement* and *Guaranty* (collectively, the "$184,000 Agreement," and together with the $60,000 Agreement, the "Agreements"), Kapitus loaned $184,000.00 to Borrower. True and correct copies of the documents that comprise the $184,000 Agreement are attached hereto as **Collective Exhibit B**.

14. Pursuant to the terms of the *Guaranty* executed in connection with $184,000 Agreement, the Debtor personally guaranteed Borrower's payment and performance of all representations, warranties, covenants, and obligations under the $184,000 Agreement. Coll. Ex. B, (Guaranty).

15. To secure the loans, the Debtor also granted Kapitus a security interest in Borrower's assets (collectively, the "Collateral"). *See* Coll. Ex. A, (Security Agreement), Coll. Ex. B, (Security Agreement).

16. Kapitus perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Maryland Department of Assessments & Taxation at File Number 230209-0135000 (the "Financing Statement") on February 9, 2023. A true and correct copy of the Financing Statement is attached as **Exhibit C**.

## II. The Debtor's Representations to Kapitus to Induce Funding Under the Agreements

17. Kapitus requires, as a threshold step in its consideration of whether to provide funding, that each merchant sign the Agreements and related documents and provide certain written representations about its financial situation, operational plans, and intentions. Because Kapitus' funding process is truncated from that of a standard financing institution, as is typical for the alternative financing industry, Kapitus relies heavily upon a merchant's representations and warranties. In fact, Kapitus' counter signature to the Agreements and funding are the last steps in the funding process.

### A. Applications

18. Prior to entering into the Agreements with Kapitus and in order to induce Kapitus to advance funds under the Agreements, the Debtor executed applications on June 16, 2021, and February 2, 2023 (together, the "Applications") and represented, among other things, that he was 100% owner of Borrower and Borrower's monthly sales were $50,000 to $100,000. True and correct copies of the Applications are attached hereto and incorporated herein as **Collective Exhibit D**.

### B. Representations and Acknowledgements

19. Prior to funding under the $184,000 Agreement in January of this year, and in order to induce Kapitus to advance funds pursuant to the $184,000 Agreement, the Debtor also executed a certain *Representations and Acknowledgments – Funding is Contingent Upon Your Completion and Review by Kapitus* form (the "R&A"), pursuant to which the Debtor acknowledged and represented to Kapitus, among other things, that:

- He was the authorized representative of Borrower;
- He was the authorized signatory on the business bank account;
- He did not anticipate closing or selling the business for any reason over the next 12 months;
- He did not plan to file for bankruptcy protection in the next 12 months for either the business or himself personally; and
- All information that he provided to Kapitus to obtain financing accurately reflected the current ownership of the business, business status and/or financial condition of the business.

A true and correct copy of the R&A is attached hereto and incorporated herein as **Exhibit E**.

20. Pursuant to the R&A, the Debtor also acknowledged that "I submitted the statements herein with the intent to obtain financing, Kapitus is relying on such statements to determine whether to approve the financing and that any false statements or misrepresentations made to obtain funding constitute fraud and will subject me and my business to legal action." Exhibit E at 1-2.

**C. The Agreements**

21. In the Agreements, the Debtor represented to Kapitus that the funding would be used exclusively for a business purpose and no other. *See* Coll. Ex. A, (Agreement), § 1.13 and p.7, Use of Proceeds Certification, Coll. Ex. B (Agreement), § 1.13 and p.7, Use of Proceeds Certification.

22. In fact, the Debtor executed a USE OF PROCEEDS CERTIFICATION whereby Debtor certified:

> I. The entirety of the loan will be used in the ordinary course of business.
>
> II. The entirety of the loan will be used exclusively for a Business Purpose and no other. A Business Purpose as applied to use of proceeds obtained under this Loan Agreement, refers solely to the purchase and acquisition of specific products or services used for the following purposes only: (i) working capital, (ii) business insurance (but not self-insurance programs), (iii) franchise fees, (iv) employee training, (v) the purchase of equipment, (vi) inventory, (vii) business supplies and raw materials, and (viii) the construction, renovation or improvement of facilities (but not the purchase of real estate). Business Purpose does not include: (a) payment for, or purchase of, any items, goods, materials real property, personal property or services for personal, individual or household use; or (b) use of funds for any proceeding under the United States Bankruptcy Code or any similar law (whether arising under Federal or State law) and/or any other legal proceeding or alternative dispute resolution proceeding.

*See* Coll. Ex. A, (Agreement) at p.7, Use of Proceeds Certification, Coll. Ex. B (Agreement) at p.7, Use of Proceeds Certification.

23. The Debtor also made the following representations and warranties to Kapitus via the Agreements, each of which Kapitus relied upon to provide funding to Borrower:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Borrower and Guarantor represent, warrant and covenant that as of this date and during the term of this Agreement:
>
> 2.1 **Borrower Information, Financial Condition and Financial Information**. The information and financial statements which have been furnished to LENDER by Borrower and Guarantor, and such future statements which will be furnished hereafter at the request of LENDER, fairly represent the ownership and operations of the Borrower's business and the financial condition of Borrower and Guarantor at such dates, and since those dates, there has been no material adverse change, financial or otherwise in such condition, operation or ownership of Borrower or Guarantor (as applicable). Borrower and Guarantor are current on any and all lease, rent or mortgage payments due. Borrower and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to LENDER. No material changes, financial or otherwise, in the condition, operation or

ownership of Borrower or Guarantor (as applicable) are in any way expected or anticipated and Borrower and Guarantor do not anticipate closing or selling Borrower's business. Neither the Borrower nor the Guarantor are party to any pending litigation that is expected to have a material impact on the Borrower or Guarantor. Borrower has a continuing, affirmative obligation to advise LENDER of any material change in its financial condition, operation or ownership. Borrower's failure to do so is a material breach of this Agreement.

. . .

2.6 **Borrower Depositing Account Agreement and Arrangements**. Without LENDER's prior written consent, Borrower will not (i) change the Account through which Borrower's receivables are settled; (ii) set up multiple accounts into which any of the Borrower's receivables are deposited or otherwise transferred; (iii) block or stop payment on LENDER debits initiated under this Agreement; (iv) permit any event to occur that could cause diversion of any of Borrower's receivables to another Account; (v) or take any other action that could have any adverse effect upon Borrower's obligations under the Transaction Documents. Borrower will batch out receipts with all payment processors on a daily basis.

. . .

2.8 **No Bankruptcy or Insolvency**. Borrower and Guarantor are solvent, and no transfer of property is being made by Borrower or Guarantor and no obligation is being incurred by Borrower or Guarantor in connection with the Transaction Documents with the intent to hinder, delay, or defraud either present or future creditors of Borrower or Guarantor. Neither Borrower nor Guarantor has as of the date of this Agreement, filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition, insolvency proceeding or other proceeding for relief for debtors or creditors, or receivership proceeding brought or pending Borrower and/or Guarantor (the "Insolvency Proceeding"). Borrower and Guarantor further and respectively warrant that neither anticipates filing or having any such voluntary or involuntary Insolvency Proceeding filed.

. . .

2.10. **Unencumbered Assets**. Other than as previously disclosed to LENDER in writing, Borrower has good and marketable title to all assets, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of LENDER.

. . .

> 2.13 **<u>Sale or Dissolution of Business</u>**. Borrower shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Borrower; or (b) effectuate the suspension, dissolution, or termination or Borrower's business without the express prior written consent of LENDER, or the written agreement of any purchaser, assignee, or transferee assuming all of Borrower's and Guarantor's obligations under the Transaction Documents pursuant to documentation satisfactory to LENDER (as applicable).
>
> 2.14 **<u>Accuracy of Information</u>**. All information provided by Borrower and Guarantor to LENDER in the Transaction Documents, in any application for financing, in all other LENDER forms and in response to any request by Lender for information whether oral or in writing, is true, accurate and complete in all respects.

Coll. Ex. A (Agreement), Coll. Ex. B (Agreement).

24. In addition, it was further represented in the Agreements that Borrower would only utilize one account (the "<u>Account</u>") and irrevocably authorized Kapitus to ACH debit the specific remittances from that Account provided under the Agreements. *Id.,* §§ 1.1, 2.6

25. Pursuant to the Agreements, the Debtor agreed that "**[i]f any information provided is false or misleading, Borrower and Guarantor(s) will be held liable for fraud in the inducement and fraud**." *See* Coll. Ex. A, (Loan Summary) (emphasis in original), Coll. Ex. B, (Loan Summary) (emphasis in original).

## III. <u>The Debtor's Misrepresentations</u>

26. Upon information and belief, the Debtor made affirmative misrepresentations in the R&A and the Agreements, each of which Kapitus relied upon to provide funding to Borrower including, but not limited to, the following:

- misrepresented that he and his business were solvent;[2]

---

[2] *See* Coll. Ex. A, (Agreement), § 2.8, Coll. Ex. B, (Agreement), at § 2.8; Ex. E, (R&A).

- misrepresented the financial condition of the business and/or omitted material adverse changes in the condition, operation and ownership of the business;[3]

- misrepresented that they would use the proceeds under the Agreements for business purposes alone;[4]

- misrepresented that they would not transfer or otherwise convey business assets or equity interest without Kapitus' express prior written consent;[5]

- misrepresented that they would use one account for the business and that they would provide Kapitus irrevocable access to the business funds;[6] and

- misrepresented that he would not permit diversion of receivables and that he would not engage in actions that would have an adverse effect upon his obligations under the Agreements.[7]

27. Upon information and belief, the Debtor and Borrower were in a precarious position for some time prior to the funding provided by Kapitus.

28. Upon information and belief, the Debtor did not intend to, nor did the Debtor, use the proceeds of Kapitus' funding for business purposes.

29. For instance, upon information and belief, the Debtor diverted the proceeds of Kapitus' funding for a "Wedding Deposit" and "Wedding Clothes" for the Debtor's child in December of 2025, just one month after the $60,000 Agreement was executed. *See* Case No. 26-14436, ECF 3 at p. 7 of 13.

30. Upon information and belief, following Borrower's execution of and the Debtor's guaranty of the Agreements, the Debtor was arrested in April of 2026 in Sarpy County, Nebraska for crimes related to financial dishonesty and misconduct.

---

[3] *See* Coll. Ex. A, (Agreement), § 2.1; Coll. Ex. B, (Agreement), § 2.1; Ex. E (R&A).

[4] *See* Coll. Ex. A, (Agreement), § 1.13; Coll. Ex. B, (Agreement), § 1.13.;

[5] *See* Coll. Ex. A, (Agreement), § 2.13; Coll. Ex. B, (Agreement), § 2.13.

[6] *See* Coll. Ex. A, (Agreement), §§ 1.1, 1.4, 2.6; Coll. Ex. B, (Agreement), §§ 1.1, 1.4, 2.6.

[7] *See* Coll. Ex. A, (Agreement), § 2.6; Coll. Ex. B, (Agreement), § 2.6.

31. In addition to the Debtor's documented financial impropriety and the Debtor's fraudulent misrepresentations made to Kapitus during the funding process, the Debtor has also made numerous misrepresentations and contradictions in its Schedules and other filings in the Bankruptcy Case.

32. Specifically, the Debtor denies that the Debtor "own[ed] a business or ha[d] any of the following connections to any business" such as a "limited liability company (LLC) or limited liability partnership (LLP)" within the four years prior to the Petition Date, defined below. *See* Case No. 26-14436, ECF 3 at p. 12 of 13. In the same filing, the Debtor discloses income from operating a business in 2024 and 2025. *Id.* at p. 2 of 13. The Debtor likewise discloses guarantees of commercial debts, including that of Borrower to Kapitus, which debt was incurred as recently as January of 2026. *See* Case No. 26-14436, ECF 1 at pp. 35, 38 of 57; *see also* Coll. Ex. A, (Agreement).

33. In summary, the Debtor and Borrower made numerous affirmative misrepresentations and intentional omissions, each of which Kapitus reasonably relied upon to fund money to Borrower.

## IV. <u>Kapitus' Funding and the Debtor's Default</u>

34. In justifiable reliance on the representations made by the Debtor in the Applications, R&A, Agreements, and the supporting documentation provided, Kapitus agreed to counter-execute the Agreements and provide funding to Borrower on the terms and conditions set forth in the Agreements.

35. In November of 2025, Kapitus transferred the proceeds of the $60,000 Agreement less applicable fees into the Account.

36. In January of 2026, Kapitus transferred the proceeds of the $184,000 Agreement less applicable fees into the Account.

37. In return, Borrower and the Debtor were to remit monthly payments to Kapitus, via ACH debit from the Account, until the entire Repayment Amount and all other fees and expenses provided for in the Agreements were paid in full. *See* Coll. Ex. A, (Agreement), Coll. Ex. B, (Agreement).

38. Pursuant to the Agreements, the Debtor was to maintain the Account with sufficient funds to cover the payments due under the Agreements to Kapitus. However, upon information and belief, the Debtor had no intention to honor the Agreements. *See, id.*

39. By March of 2026, the Debtor and Borrower defaulted on their payment obligations under the $60,000 Agreement due to insufficient funds in the Account, thus preventing Kapitus' ACH payments from processing.

40. By April of 2026, the Debtor and Borrower defaulted on their payment obligations under the $184,000 Agreement due to insufficient funds in the Account, thus preventing Kapitus' ACH payments from processing.

41. Debtor and Borrower only satisfied approximately 14% of the $60,000 Agreement and 36% of the $184,000 Agreement.

42. On April 24, 2026 (the "<u>Petition Date</u>"), the Debtor initiated this Chapter 7 bankruptcy proceeding. *See* Case No. 26-14436, ECF 1

43. Kapitus is a creditor in this bankruptcy case in the amount of at least $340,116.27 as of the Petition Date.

44. The Debtor never intended to perform his obligations under the Agreements and obtained money from Kapitus by false pretenses, false statements, or actual fraud.

**COUNT I**
**(Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A))**

45. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

46. The Debtor's liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

47. The Debtor obtained money and services by false pretenses, false representation(s), and/or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

48. As more fully detailed herein, the Debtor made material misrepresentations of fact including, but not necessarily limited to, representing that: (1) the Debtor and Borrower were not insolvent; (2) Borrower's financial condition and ownership was accurately reflected to Kapitus; (3) Borrower would use Kapitus' funding solely for business purposes; (4) Borrower/Debtor would not transfer or otherwise convey business assets or equity interest without Kapitus' express prior written consent; (5) Borrower would use one Account for payment under the Agreements and provide Kapitus with irrevocable access to that Account for payment; and (6) Borrower/Debtor would not permit diversion of receivables or engage in actions that would have an adverse effect upon obligations under the Agreements.

49. The Debtor made material omissions of fact that induced Kapitus into funding the proceeds under the Agreements, including, without limitation, the true nature of Borrower's financial condition and intent for the funds.

50. Upon information and belief, at the time the representations and/or material omissions were made, the Debtor knew that his and Borrower's representations and omissions were false, untrue, misleading, and, as a direct and proximate cause of these intentional

misrepresentations and omissions, the Debtor knew that Kapitus would be induced to provide Borrower the funding contemplated by the Agreements.

51. Upon information and belief, the Debtor intended to induce Kapitus to act or refrain from acting upon his misrepresentations and/or material omissions, and Kapitus justifiably relied upon such false representations and omissions.

52. As a result of misrepresentations and fraud by the Debtor, the Debtor obtained funding from Kapitus which would not have been authorized by Kapitus if the misrepresentations had not been made, or if material facts that were omitted and concealed, were actually disclosed.

53. Kapitus suffered damages as a direct and proximate consequence of the misrepresentations made by the Debtor.

54. All of the acts and omissions that constitute a breach or default of the Agreements were performed or omitted by, at the direction of, or with the consent of the Debtor.

55. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(A), the debt owed to Kapitus is non-dischargeable. Kapitus is also entitled to its attorneys' fees and costs incurred in prosecuting this Complaint along with interest at the statutory rate.

**<u>COUNT II</u>**
**(Non-dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(B))**

56. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

57. The Debtor's liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

58. Pursuant to 11 U.S.C. §523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which

the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is nondischargeable.

59. Borrower, an insider of the Debtor, did obtain money from Kapitus by the following written, materially false statements respecting Borrower's financial condition on which Kapitus reasonably relied, among others, that: (1) the Debtor and Borrower were not insolvent; (2) Borrower's financial condition was accurately reflected to Kapitus; (3) Borrower would use Kapitus' funding solely for business purposes; (4) Borrower/Debtor would not transfer or otherwise convey business assets or equity interest without Kapitus' express prior written consent; (5) Borrower would use one Account for payment under the Agreements and provide Kapitus with irrevocable access to that Account for payment; and (6) Borrower had monthly sales of $50,000 to $100,000; and (7) Borrower/Debtor would not permit diversion of receivables or engage in actions that would have an adverse effect upon obligations under the Agreements.

60. As more fully detailed above, at the same time the representations were made, the Debtor knew these representations were materially false, untrue, and misleading.

61. The Debtor caused these false statements to be made in writing, including, but not limited to publishing such statements in the Agreements.

62. Borrower is an insider of the Debtor, because, at the time, the Debtor served as an owner, shareholder, officer, and/or director of Borrower, and/or person in control of Borrower, within the meaning of "insider" under 11 U.S.C. § 101(31)(A)(iv).

63. Kapitus reasonably relied on these written statements made by the Debtor in deciding to transfer the funds to Borrower.

64. Kapitus suffered damages as a direct and proximate consequence of the materially false statements made by the Debtor.

65. As a result of these materially false written statements by the Debtor, the Debtor obtained from Kapitus, *inter alia*, the funding under the Agreements which would not have been authorized by Kapitus if the materially false statements had not been made.

66. The Debtor's activities described above constitute obtaining money by materially false written statements regarding an insider's financial condition, on which Kapitus relied, and which Debtor made with the intent to deceive.

67. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), the debt owed to Kapitus is non-dischargeable. Kapitus is also entitled to its attorneys' fees and costs incurred in prosecuting this Complaint along with interest at the statutory rate.

**COUNT III**
**(Non-dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(4))**

68. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

69. The Debtor's liability to Kapitus, as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of section 523(a)(4) of the Bankruptcy Code.

70. Due to the insolvency of Borrower, the Debtor had a fiduciary obligation to Kapitus.

71. Upon information and belief, the Debtor entered into the Agreement with the specific intent to transfer or hide the loan funds and collateral and prevent Kapitus from collecting the obligations owed to it.

72. The Debtor obtained the funding and took the funding by committing fraud and defalcation while acting in a fiduciary capacity as the owner and officer of Borrower.

73. The Debtor misappropriated portions of the funding for his own benefit by fraudulent intent or deceit.

74. The Debtor used the funds received without explanation, reason or purpose relating to Borrower's business.

75. Virginia law governs the Agreement. Under Virginia law, an express trust can be found through the parties' actions and does not need to be in writing. All that is necessary is the unequivocal intent that the legal estate be vested in one person, to be held in some matter or for some purpose on behalf of another. A trust is created if the intention is that the money be kept or used as a separate fund for the benefit of the payor or a third person.

76. An express trust is a fiduciary relationship with respect to property.

77. Here, the parties intended to and did enter into an express trust, and the Debtor owed a fiduciary duty to Kapitus. The Debtor was supposed to hold the business' receipts in the Account for Kapitus' benefit. Upon information and belief, the Debtor did not do so.

78. All of the related acts and omissions were performed or omitted by, at the direction of, or with the consent of, the Debtor.

79. The Debtor's obligation to Kapitus is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is nondischargeable.

80. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), the debt owed to Kapitus is non-dischargeable. Kapitus is also entitled to its attorneys' fees and costs incurred in prosecuting this Complaint along with interest at the statutory rate.

**COUNT IV**
**(Non-dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(6))**

81. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

82. Pursuant to section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be nondischargeable.

83. Kapitus believes and alleges that the Debtor entered into the Agreements with the specific intent to divert the funds for his own use. In addition, the Debtor made false statements to Kapitus with the intent to induce Kapitus to advance funds.

84. The Debtor almost immediately diverted the funds away from Borrower.

85. Further, the Debtor willfully and maliciously executed the Agreements and represented to Kapitus that: (1) the Debtor and Borrower were not insolvent; (2) Borrower's financial condition was accurately reflected to Kapitus; (3) Borrower would use Kapitus' funding solely for business purposes; (4) Borrower/Debtor would not transfer or otherwise convey business assets or equity interest without Kapitus' express prior written consent; (5) Borrower would use one Account for payment under the Agreements and provide Kapitus with irrevocable access to that Account for payment; and (6) Borrower/Debtor would not permit diversion of receivables or engage in actions that would have an adverse effect upon obligations under the Agreements.

86. The Debtor's activities described herein constitute willful and malicious conduct which resulted in damage to Kapitus.

87. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), the Debtor's debt to Kapitus is non-dischargeable and a judgment for money damages pursuant to the request herein. Kapitus is also entitled to its attorneys' fees and costs of suit incurred in prosecuting this Complaint along with interest at the statutory rate.

**PRAYER FOR RELIEF**

**WHEREFORE**, Kapitus requests judgment against the Debtor as follows:

A. On its First Claim for Relief, for judgment against the Debtor in the amount owed to Kapitus and determining that such debt is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

B. On its Second Claim for Relief, for judgment against the Debtor in the amount owed to Kapitus and determining that such debt is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

C. On its Third Claim for Relief, for judgment against the Debtor in the amount owed to Kapitus and determining that such debt is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

D. On its Fourth Claim for Relief, for judgment against the Debtor in the amount owed to Kapitus and determining that such judgment is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

E. Granting interest, attorneys' fees and costs herein incurred; and

F. Granting such other and further relief as this Court may deem just and proper.

Dated: August 3, 2026

Respectfully Submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

/s/ *Emmit F. Kellar*
Emmit F. Kellar (Fed. Bar No.: 20734)
100 Light Street, 34th Floor
Baltimore, Maryland 21202
Telephone: (410) 862-1368
Fax: (410) 547-0699
ekellar@bakerdonelson.com

*Attorneys for Kapitus Servicing, Inc. as authorized sub-servicing agent of Kapitus LLC*