# EXHIBIT A

# COLLECTIVE EXHIBIT A

**Contract# 22260821**

VA

KAPITUS

**LOAN SUMMARY**

**BORROWER:**

BORROWER'S LEGAL NAME: RAJA M. DIN, M.D. PLLC TRADE NAME: RAJA M DIN MD

TYPE OF ENTITY: LIMITED LIABILITY COMPANY

PHYSICAL ADDRESS: 7501 GREENWAY CENTER DR STE 620 CITY: GREENBELT STATE: MD ZIP: 20770-6702

MAILING ADDRESS: CITY: STATE: ZIP:

TELEPHONE: (240) 676-1471 EMAIL ADDRESS: MONAREZA@DOCGASTRO.COM

| | |
|---|---|
| **LENDER:** | **Kapitus LLC, 2500 Wilson Boulevard Suite 350, Arlington, VA 22201** |
| **SERVICER:** | **Kapitus Servicing, Inc., 2500 Wilson Boulevard, Suite 350, Arlington, VA 22201** |
| **PRINCIPAL AMOUNT:** | **$60,000.00** |
| **ORIGINATION FEE:** | $1,500.00 (2.5% OF PRINCIPAL AMOUNT) |
| **DISBURSEMENT AMOUNT:** | **$58,500.00**<br>*Note that the Disbursement Amount is the Principal Amount reduced by the Origination Fee and any amounts owed to the Lender from a prior agreement or paid to a third party on the Borrower's behalf.* |
| **TOTAL INTEREST CHARGED:** | **$13,200.00** |
| **Total Repayment Amount**:<br>Principal plus Interest | $73,200.00 |
| **PAYMENT SCHEDULE:** | **Term (Months) 12.000000, 52** payments of **$1,409.00** |
| **PRE-PAYMENT OPTION:** | Borrower has the option to prepay at any time, and a prepayment discount may apply based on the time elapsed since disbursement, the Borrower's repayment history, and the remaining amount due. |

Each signatory represents and warrants that: (1) he or she is authorized by Borrower to enter into this loan, legally binding the Borrower to repay the loan as agreed; and (2) all information provided in the Transaction Documents, in the applications provided, documents submitted, financial information provided, and in any interviews conducted during underwriting is true, accurate and complete in all respects. Borrower and Guarantor expressly acknowledge and agree that Lender and Kapitus Servicing, Inc. ("Kapitus Servicing") are relying on such representations and warranties when determining to provide this loan and that the accuracy thereof is a material condition of the Transaction Documents. **If any information provided is false or misleading, Borrower and Guarantor(s) will be held liable for fraud in the inducement and fraud.**

**IT IS UNDERSTOOD THAT ANY REPRESENTATIONS OR ALLEGED PROMISES BY INDEPENDENT BROKERS OR AGENTS ARE NULL AND VOID IF NOT INCLUDED IN THE TRANSACTION DOCUMENTS. ANY MODIFICATION OR OTHER ALTERATION TO THE TRANSACTION DOCUMENTS MUST BE IN WRITING AND DULY EXECUTED BY THE PARTIES.**

**CONSENT TO RECEIVE AUTODIALED AND PRERECORDED CALLS AND MESSAGES**

LENDER, Kapitus Servicing and their subsidiaries and affiliates (collectively, "KAPITUS") may from time to time notify applicant(s) of various promotional offers and other marketing information, or contact Borrower(s) and Guarantor(s) in connection with the servicing of the Transaction Documents, or in connection with any default under the Transaction Documents. By signing this Agreement, Borrower(s) and Guarantor(s) expressly consent and authorize KAPITUS to call, send text messages, and/or send other electronic messages (including prerecorded or artificial voice messages) using an automatic telephone dialing system to any telephone number provided by Borrower(s) or Guarantor(s) in the Transaction Documents, any and all applications or any administrative form or other means, including cellular phone numbers and landlines, regardless of their inclusion on any do not call list, for purposes of servicing, collections, marketing or promoting any product offered by KAPITUS. Borrower(s) and Guarantor(s) further expressly consent and authorize KAPITUS to record all calls with KAPITUS. Please note that you are not required to consent to be called for marketing or promotional purposes in order to qualify for financing or obtain any other products or services from KAPITUS. If you do not agree to be called for marketing or promotional purposes, please call (844) 547-9396 or email DNC@kapitus.com.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "LOAN AGREEMENT", "SECURITY AGREEMENT" AND THE "GUARANTY" (AS APPLICABLE) ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS LOAN SUMMARY. CAPITALIZED TERMS NOT DEFINED IN THIS LOAN SUMMARY, SHALL HAVE THE MEANING SET FORTH IN THE "LOAN AGREEMENT," "SECURITY AGREEMENT" OR "GUARANTY," AS APPLICABLE.

**BORROWER**

By RAJA MOHIUDDIN, OWNER — DocuSigned by: [signature] 02F0C337BCDC4AF...

(Print Name and Title) (Signature)

**LENDER**

By **David Zullo** — David Zullo

(Company Officer or Designee) (Signature)

**GUARANTOR**

By Raja Mohiuddin — DocuSigned by: [signature] 02F0C337BCDC4AF...

(Print Name) (Signature)

**GUARANTOR**

By ____________________ ____________________

(Print Name) (Signature)

**GUARANTOR**

By ____________________ ____________________

(Print Name) (Signature)

KAPITUS Servicing

## AUTHORIZED SUB-SERVICING AGENT

Lender, as Agent, may perform any and all of its duties and exercise its rights and powers by or through any one or more sub-agents. Kapitus Servicing is the Authorized Sub-Servicing Agent and the General Agent of the Lender. Kapitus Servicing will initiate all debits and credits to Borrower's account, provide customer service and administrative support to Lender and Borrower, initiate any necessary collection actions in the event of any default under the Transaction Documents, initiate and defend legal actions related to the Transaction Documents, and provide legal support and collection services to Lender. Any and all authorizations and/or rights granted to Lender under the Transaction Documents are granted to Kapitus Servicing, as servicer and general agent of the Lender.

## SERVICER FEES

| | | |
|---|---|---|
| 1. | Banking Fees | $50.00 for outgoing wire transfers or payments by check |
| 2. | Bank Account Changes | $75.00 |
| 3. | UCC Terminations | $250.00 |
| 4. | Default Fee | $2,500.00 |
| 5. | Returned Payment Fee | $175.00 |

*OTHER THAN THE ORIGINATION FEE, IF ANY, AND THE SERVICER FEES SET FORTH ABOVE, NEITHER LENDER NOR KAPITUS SERVICING IS CHARGING ANY FEES TO BORROWER. IF BORROWER IS CHARGED ANY ADDITIONAL FEE IN CONNECTION WITH THE LOAN, IT IS NOT BEING AUTHORIZED OR CHARGED BY KAPITUS AND BORROWER SHOULD INFORM KAPITUS IF ANY UNAUTHORIZED FEE HAS BEEN CHARGED IN CONNECTION WITH THE TRANSACTION DOCUMENTS.*

*IF YOUR APPLICATION FOR BUSINESS CREDIT IS DENIED, YOU HAVE THE RIGHT TO A WRITTEN STATEMENT OF THE SPECIFIC REASONS FOR THE DENIAL. TO OBTAIN THE STATEMENT, PLEASE CONTACT KAPITUS LLC AT THE ABOVE ADDRESS OR PHONE NUMBER WITHIN 60 DAYS FROM THE DATE YOU ARE NOTIFIED OF THE CREDIT DECISION. YOU HAVE THE RIGHT TO OBTAIN A WRITTEN STATEMENT OF REASONS FOR THE DENIAL WITHIN 30 DAYS OF RECEIVING YOUR REQUEST FOR THE STATEMENT.*

*NOTICE: THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT PROHIBITS CREDITORS FROM DISCRIMINATING AGAINST CREDIT APPLICANTS ON THE BASIS OF RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, MARITAL STATUS, AGE (PROVIDED THE APPLICANT HAS THE CAPACITY TO ENTER INTO A BINDING CONTRACT); BECAUSE ALL OR PART OF THE APPLICANT'S INCOME DERIVES FROM ANY PUBLIC ASSISTANCE PROGRAM; OR BECAUSE THE APPLICANT HAS IN GOOD FAITH EXERCISED ANY RIGHT UNDER THE CONSUMER CREDIT PROTECTION ACT. THE FEDERAL AGENCY THAT ADMINISTERS COMPLIANCE WITH THIS LAW CONCERNING THIS CREDITOR IS THE FEDERAL TRADE COMMISSION, 600 PENNSYLVANIA AVENUE, NW, WASHINGTON, DC 20580, FTC.GOV.*

2500 Wilson Boulevard, Suite 350, Arlington, Virginia 22201; Tel. 844-547-9396

**CONTRACT# 22260821**

# LOAN AGREEMENT

This Loan Agreement (the "Agreement" or the "Loan Agreement") dated November 24, 2025 ("Agreement Date") between KAPITUS LLC ("Lender") and RAJA M. DIN, M.D. PLLC, Raja M Din Md ("Borrower") and Raja Mohiuddin, ("Guarantor"). The Loan Summary, the Loan Agreement, the Security Agreement, and the Guaranty are collectively referred to as the "Transaction Documents."

For value received, Borrower hereby promises to pay to LENDER the Repayment Amount specified below, which is comprised of the Principal plus Interest, in lawful money of the United States:

| | | | |
|---|---|---|---|
| **Principal: $60,000.00** | **Interest: $13,200.00** | **Payment: $1,409.00** | **Repayment Amount: $73,200.00** |

The Repayment Amount shall be paid to LENDER by Borrower using and irrevocably authorizing Automated Clearing House ("ACH") debits from one bank account acceptable to LENDER (the "Account") to remit the Payment until such time as LENDER receives payment in full of the Repayment Amount plus any other amounts owed to LENDER under this Agreement. Borrower hereby authorizes LENDER to ACH debit payment from the Account on a Weekly basis on a business day. Borrower understands that it is responsible for ensuring that the Payment to be debited by LENDER remains in the Account, or Borrower will be charged an ACH return fee as specified in the Loan Summary. LENDER is not responsible for any overdrafts or rejected transactions that may result from LENDER ACH debiting any amounts under the terms of this Agreement. Notwithstanding anything to the contrary in this Loan Agreement or any other agreement between LENDER and Borrower, upon the occurrence of an Event of Default under Section 3 of the Loan Agreement, the entire Repayment Amount and any other amounts or fees due, less any amounts already paid, shall become immediately due and payable.

## I. GENERAL TERMS

1.1 **AUTHORIZATION TO DEBIT.** Borrower hereby authorizes LENDER and/or its agents to obtain any amounts due to LENDER by ACH debit of the Account or of any other Borrower account as provided under this Agreement.

1.2 **EFFECTIVE DATE**. This Agreement begins on the date that funds are disbursed to Borrower.

1.3 **LOAN TERM.** The Loan shall have a 12 month term.

1.4 **PROMISE TO PAY.** Borrower agrees to pay LENDER the Repayment Amount in accordance with the Payment Schedule set forth in the Loan Summary as well as any other fees, costs and interest authorized hereunder as incurred.

1.5 **FINANCIAL CONDITION.** Borrower and Guarantor authorize LENDER to investigate their creditworthiness, financial responsibility and history, and agree to provide LENDER any financial statements, tax returns, references, or other financial information, as LENDER deems necessary prior to or after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of credit and financial information. Borrower and Guarantor authorize LENDER to update their credit and financial profile from time to time in the future, as LENDER deems appropriate, including by obtaining investigative, consumer, and personal or business credit reports. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

1.6. **FINANCIAL INFORMATION AND REEVALUATION OF CREDIT.** Borrower and Guarantor authorize LENDER to obtain business and personal credit bureau and consumer reports at any time and from time to time for purposes of deciding whether to approve the requested loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's or Guarantor's request, LENDER will advise Borrower or Guarantor if LENDER obtained a credit report and LENDER will give Borrower or Guarantor the credit bureau's name and address. Borrower and Guarantor agree to submit current financial information, update any credit application, or both, at any time promptly upon LENDER's request. LENDER may report LENDER'S credit experiences with Borrower and Guarantor to third parties as permitted by law. Borrower and Guarantor also agree that LENDER may release information to comply with governmental reporting or legal process that LENDER believes may be required, whether or not such is in fact required, or when necessary or helpful in completing a transaction, or when investigating a loss or potential loss, and/or seeking recovery for such loss. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

1.7 **TRANSACTIONAL HISTORY.** Borrower and Guarantor authorize LENDER to act as Borrower's and Guarantor's agent, respectively, for purposes of accessing and retrieving transaction history information regarding Borrower and/or Guarantor from Borrower's and Guarantor's financial institutions, banks, banking accounts, and/or credit card processing accounts. Borrower and Guarantor authorize their respective financial institutions to provide LENDER with Borrower's and Guarantor's transaction history, and any and all information regarding Borrower and Guarantor's accounts, balances, or transfers, for any purpose, including for purposes of collection. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

1.8 **INDEMNIFICATION.** Borrower and Guarantor jointly and severally will indemnify and hold LENDER, and its officers, directors, shareholders, members, managers, employees, owners, partners, affiliates, subsidiaries, parent company, successors, transferees, assigns, purchasers, investors, financiers, agents, representatives, attorneys and professionals, (collectively, the "LENDER PARTIES") harmless from all losses, costs, damage, liabilities or expenses (including, without limitation, court costs and attorneys' fees) that the LENDER PARTIES may sustain or incur by reason of defending claims asserted by Borrower and/or Guarantor, and all persons and entities claiming by, through or under them, to the fullest extent permitted by law, in protecting the security interest conveyed pursuant to the Security Agreement or the priority thereof, in enforcing any other term of the Transaction Documents, and/or in the prosecution or defense of any action or proceeding concerning any matter arising out of or in connection with the Transaction Documents and/or any other documents now or hereafter executed in connection with the Transaction Documents, the Collateral and/or the Additional Collateral, including without limitation any legal or dispute resolution proceeding, bankruptcy proceeding, receivership, and/or any other insolvency proceeding or other proceeding for relief for debtors or creditors.

In no event will the LENDER PARTIES be liable

for any claims asserted by Borrower and/or Guarantor, and all persons and entities claiming by, through or under them, under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Borrower and Guarantor(s). This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

1.9 **__Power of Attorney.__** Borrower and Guarantor irrevocably appoint LENDER as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to LENDER from Borrower and Guarantor's respective financial institutions, or upon the occurrence of an Event of Default under Section III hereof, to settle all obligations due to LENDER from Borrower and Guarantor, under the Transaction Documents, including without limitation: (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral and/or Additional Collateral (as defined in the Security Agreement and the Guaranty); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Borrower and Guarantor's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to LENDER; and (v) to file any claims or take any action or institute any proceeding which LENDER may deem necessary for the collection of any of the unpaid Repayment Amount , and any other fees, costs and interest authorized hereunder, from the Collateral and/or Additional Collateral, or otherwise to enforce its rights with respect to payment of the Repayment Amount , and any other fees, costs and interest authorized hereunder. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

1.10 **__Disclosure of Credit Information.__** Borrower and each person signing this Agreement on behalf of Borrower and/or as Guarantor, in respect of himself or herself personally, authorizes LENDER to disclose to any third party information concerning Borrower and Guarantor's credit standing (including credit bureau reports that LENDER obtains) and business conduct. Borrower and Guarantor hereby waive to the maximum extent permitted by law any claim for damages against the LENDER PARTIES relating to any (i) investigation undertaken by or on behalf of LENDER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

1.11 **__Publicity.__** Borrower and Guarantor authorize LENDER to use its, his or her name in a listing of clients and in advertising and marketing materials. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

1.12 **__UCC Agent & D/B/A's.__** Borrower and Guarantor hereby acknowledge and agree that LENDER may be using affiliates, representatives, agents, "doing business as," "d/b/a," and/or fictitious names in connection with various matters relating to the transaction between LENDER and Borrower and Guarantor, and may file UCC financing statements and other notices or filings using such entities or names on its own behalf or through LENDER'S UCC agent. LENDER shall have no obligation to terminate any UCC financing statement filed in connection with this Agreement absent a written request by Borrower after repayment in full of the Borrower's obligation under the Agreement and payment of the UCC termination fee as stated in the Loan Summary. Notwithstanding any terms to the contrary contained herein, and except as may be required under applicable law, LENDER shall have no obligation to terminate any UCC financing statement while there is a pending: (i) petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue filed by or against LENDER, Borrower, Guarantor, or any other guarantor; (ii) insolvency proceeding or other proceeding instituted against LENDER, Borrower, Guarantor, and/or any other guarantor for relief for debtors or creditors; (iii) receivership proceeding brought by or against LENDER, Borrower, Guarantor, and/or any other guarantor; and/or (iv) any other legal proceeding or alternative dispute resolution proceeding between any of the Borrower and/or Guarantor, on the one hand, and the LENDER PARTIES, on the other hand. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

1.13 **__Loan for Specific Purposes Only__**. The proceeds of the loan may be used only for the specific purposes as set forth in a Use of Proceeds Certification Addendum, and not for any other purposes. Under no circumstances will the loan be used for personal, family or household purposes. Borrower and Guarantor understand that Borrower's agreement not to use the loan for personal, family or household purposes means that certain important duties imposed upon entities making loans for consumer or personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to the loan or the Transaction Documents. Borrower and Guarantor agree that a breach by Borrower and/or Guarantor of the provisions of this section will not affect LENDER'S right to (i) enforce Borrower's and Guarantor's promise to pay for all amounts owed under this Agreement, regardless of the purpose for which the loan is in fact obtained or (ii) use any remedy legally available to LENDER, even if that remedy would not have been available had the loan been made for consumer purposes.

1.14 **__Alternative Payment Methods.__** If Borrower or Guarantor knows that for any reason LENDER will be unable to receive payment from Borrower's bank account as described in the Loan Agreement, then Borrower and/or Guarantor must promptly set up another arrangement for payment that is authorized by LENDER. Borrower and Guarantor understand and agree that alternate payments made at any other address or method than as specified by LENDER may result in a delay in processing and/or crediting payments from Borrower and/or Guarantor.

1.15 **__Option to Prepay__.** Borrower shall have the option to prepay the Repayment Amount at any time by paying to LENDER the sum of the entire Repayment Amount and any fees incurred under this Agreement, less payments previously made. LENDER may, from time to time, and in the LENDER's sole discretion, offer discounts for prepayment of the loan communicated to Borrower through or more customer web interfaces, emails or addenda to this Agreement. Such prepayment discounts will be based on the time elapsed since disbursement of the Funded Amount, the Borrower's repayment history, and the remaining amount due under the loan.

1.16 **__Application of Payments__.** LENDER reserves the right to allocate payments received between principal, interest and fees in any manner LENDER chooses and in LENDER'S sole discretion. Borrower and Guarantor understand and agree that fees incurred and interest will generally be paid first, in the case of fees, or earlier in term, in the case of interest.

1.17 **__Consent to Jurisdiction and Venue__.** Borrower and Guarantor agree that any suit, action or proceeding to enforce or arising out of the Transaction Documents shall be brought in any court in the Commonwealth of Virginia or in the United States District Court for the Eastern District of Virginia (the "__Acceptable Forums__"). Borrower and Guarantor agree that the Acceptable Forums are convenient to them, submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. In the event a legal proceeding concerning the Transaction Documents is initiated in any other forum, Borrower and Guarantor waive any right to oppose any motion or application made by LENDER to transfer such proceeding to an Acceptable Forum, or to dismiss the action on the grounds of *forum non conveniens*. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this

Agreement.

1.18 **GOVERNING LAW.** The Transaction Documents and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to the Transaction Documents is governed by, and the Transaction Documents will be construed in accordance with the laws of the Commonwealth of Virginia (to the extent not preempted by federal law) without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of the Transaction Documents and the amounts contracted for, charged and reserved under this Agreement will be governed by the laws of the Commonwealth of Virginia. Borrower and Guarantor understand and agree that (i) Lender is located in Virginia, (ii) Lender makes all final credit decisions from Lender's office in Virginia, (iii) the loan is made in Virginia (that is, no binding contract will be formed until Lender receives and accepts Borrower's signed Agreement in Virginia) and (iv) Borrower's payments are not accepted until received by Lender in Virginia. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Borrower and Guarantor represent, warrant and covenant that as of this date and during the term of this Agreement:

2.1 **BORROWER INFORMATION, FINANCIAL CONDITION AND FINANCIAL INFORMATION.** The information and financial statements which have been furnished to LENDER by Borrower and Guarantor, and such future statements which will be furnished hereafter at the request of LENDER, fairly represent the ownership and operations of the Borrower's business and the financial condition of Borrower and Guarantor at such dates, and since those dates, there has been no material adverse change, financial or otherwise, in such condition, operation or ownership of Borrower or Guarantor (as applicable). Borrower and Guarantor are current on any and all lease, rent or mortgage payments due. Borrower and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to LENDER. No material changes, financial or otherwise, in the condition, operation or ownership of Borrower and Guarantor (as applicable) are in any way expected or anticipated and Borrower and Guarantor do not anticipate closing or selling the business of Borrower. Neither the Borrower nor the Guarantor are party to any pending litigation that is expected to have a material impact on the Borrower or Guarantor. Borrower has a continuing, affirmative obligation to advise LENDER of any material adverse change in its financial condition, operation, or ownership. Borrower's failure to do so is a material breach of this Agreement.

2.2 **COMPLIANCE WITH LAW.** Borrower is in compliance and shall comply with all laws, including possession of all necessary permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3 **AUTHORIZATION.** Borrower, and each person signing the Transaction Documents on behalf of Borrower and/or as Guarantor, in respect of himself or herself personally and the person(s) signing the Transaction Documents on behalf of Borrower, have full power and authority to execute the Transaction Documents and to incur and perform the obligations under the Transaction Documents, all of which have been duly authorized.

2.4 **INSURANCE.** Borrower will maintain property, liability and business-interruption insurance and name LENDER as certificate holder, loss payee and additional insured in amounts and against risks as are satisfactory to LENDER and shall provide LENDER proof of such insurance.

2.5. **TAX OBLIGATIONS.** Borrower and Guarantor are currently in compliance with all federal, state, and local tax laws, have filed all returns, and have paid all taxes due, except as disclosed to LENDER. No federal, state, or local taxing authority has filed any lien against the assets of the Borrower and/or Guarantor. Borrower or Guarantor shall pay all taxes owed to federal, state, or local governments when due.

2.6 **BORROWER DEPOSITING ACCOUNT AGREEMENT AND ARRANGEMENTS.** Without LENDER's prior written consent, Borrower will not (i) change the Account through which Borrower's receivables are settled; (ii) set up multiple bank accounts into which any of the Borrower's receivables are deposited or otherwise transferred; (iii) block or stop payment on LENDER debits initiated under this Agreement; (iv) permit any event to occur that could cause diversion of any of Borrower's receivables to another Account; (v) or take any other action that could have any adverse effect upon Borrower's obligations under the Transaction Documents. Borrower will batch out receipts with all payment processors on a daily basis.

2.7 **CHANGE OF NAME, LOCATION OR JURISDICTION OF ORGANIZATION.** Borrower will not conduct Borrower's businesses under any name other than as disclosed to LENDER, change any of its places of business, or change its jurisdiction of organization without ten (10) days prior written notice to LENDER.

2.8 **NO BANKRUPTCY OR INSOLVENCY.** Borrower and Guarantor are solvent, and no transfer of property is being made by Borrower or Guarantor and no obligation is being incurred by Borrower or Guarantor in connection with the Transaction Documents with the intent to hinder, delay, or defraud either present or future creditors of Borrower or Guarantor. Neither Borrower nor Guarantor has as of the date of this Agreement, filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition, insolvency proceeding or other proceeding for relief for debtors or creditors, or receivership proceeding brought or pending against Borrower and/or Guarantor (the "Insolvency Proceeding"). Borrower and Guarantor further and respectively warrant that neither anticipates filing or having any such voluntary or involuntary Insolvency Proceeding filed.

2.9 **OTHER FINANCING.** Borrower shall not enter into any arrangement, agreement or commitment, whether in the form of a purchase and sale of receivables (such as a merchant cash advance or factoring contract), a loan against, or the sale or purchase of credits against, any receipts, receivables, cash deposits or future card or mobile payment sales with any party other than LENDER without LENDER's written permission.

2.10 **UNENCUMBERED ASSETS.** Other than as previously disclosed to LENDER in writing, Borrower has good and marketable title to all assets, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of, LENDER.

2.11 **DEFAULT UNDER OTHER CONTRACTS.** Borrower's and/or Guarantor's execution of or performance under this Agreement will not cause or create an event of default by Borrower and/or Guarantor under any contract with another person or entity.

2.12 **AUTHORIZATION TO OBTAIN LEASE INFORMATION.** Borrower and Guarantor authorize LENDER to receive pertinent information regarding the commercial lease or mortgage for the physical location of Borrower's business (the "Premises") from any applicable lender, leasing company or agent. Upon any Event of Default under this Agreement, as security for the Borrower's obligations set forth herein, Borrower and/or Guarantor shall deliver to LENDER an executed Assignment of Lease covering the Premises in favor of LENDER.

2.13 **SALE OR DISSOLUTION OF BUSINESS.** Borrower shall not: (a) sell, dispose, transfer or otherwise convey its business, assets and/or any equity interest in Borrower; or (b) effectuate the suspension, dissolution, or termination or

Borrower's business without the express prior written consent of LENDER, and (ii) the written agreement of any purchaser, assignee, or transferee assuming all of Borrower's and Guarantor's obligations under this Agreement pursuant to documentation satisfactory to LENDER (as applicable).

2.14 **ACCURACY OF INFORMATION.** All information provided by Borrower and Guarantor to LENDER in the Transaction Documents, in any application for financing, in all other LENDER forms and in response to any request by Lender for information whether oral or in writing, is true, accurate and complete in all respects.

**III. EVENTS OF DEFAULT AND REMEDIES**

3.1 **EVENTS OF DEFAULT.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a) Borrower obtains, or Guarantor obtains on Borrower's behalf, another loan, factoring agreement, or other financing, whether secured or unsecured during the performance of this Agreement.

(b) Borrower or Guarantor violate any term, covenant, or condition in the Transaction Documents;

(c) Borrower or Guarantor use the funds for any household or non-business purpose;

(d) any representation or warranty by Borrower or Guarantor in the Transaction Documents is incorrect, incomplete, false or misleading in any material respect when made and/or not promptly updated in accordance with this Agreement;

(e) Borrower or Guarantor admits its inability to pay its debts, or makes a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Borrower or Guarantor seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts (as applicable); or any receivership proceeding shall be instituted by or against Borrower or Guarantor;

(f) Borrower or Guarantor, and/or all persons and entities claiming by, through or under Borrower and Guarantor, sends a notice of termination of the Security Agreement, Guaranty and/or of any UCC financing statement;

(g) Borrower and/or Guarantor, and/or all persons and entities claiming by, through or under Borrower or Guarantor, suspends, dissolves or terminates Borrower's business;

(h) Borrower or Guarantor, and/or all persons and entities claiming by, through or under Borrower or Guarantor, sells, assigns and/or transfers Borrower's business, and/or any interest therein that constitutes a change of control in such business, or sells, assigns and/or transfers all or substantially all of Borrower's assets without prior written consent of LENDER;

(i) Borrower or Guarantor, and/or all persons and entities claiming by, through or under Borrower or Guarantor, makes or sends notice of any intended assignment, bulk sale and/or transfer by Borrower;

(j) Borrower or Guarantor, and/or all persons and entities claiming by, through or under Borrower or Guarantor, performs any act that encumbers the cash flow of the Borrower's business or reduces the value of the Collateral or the security interest granted in the Collateral under the Security Agreement;

(k) Borrower or Guarantor, and/or all persons and entities claiming by, through or under Borrower or Guarantor, perform any act that reduces the value of the Additional Collateral or the security interest granted in the Additional Collateral under the Security Agreement;

(l) Borrower or Guarantor fail to pay taxes to any federal, state, or local government when due;

(m) Borrower or Guarantor defaults under any of the terms, covenants and conditions of any other agreement with LENDER including those affiliated or associated businesses with the Borrower or Guarantor; or

(n) Borrower fails to make any payment as agreed.

3.2 **REMEDIES FOR DEFAULT.** Upon the occurrence of an Event of Default that is not waived pursuant to Section 4.1 hereof, LENDER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Borrower and Guarantor's obligations under the Transaction Documents, or pursuant to any other legal or equitable right or remedy. Upon any Event of Default, the entire Repayment Amount and unpaid fees not already paid to LENDER shall become immediately due and payable to LENDER. In addition, upon an Event of Default, and without limitation, (i) LENDER may enforce the provisions of the Transaction Documents against the Borrower and Guarantor; (ii) LENDER may enforce its security interest in the Collateral, the Additional Collateral and the Cross-Collateral; (iii) LENDER may debit Borrower's and/or Guarantor's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Borrower's and/or Guarantor's respective bank accounts or otherwise; (iv) LENDER may receive funds directly from any credit card processor of Borrower; (v) LENDER may exercise its rights under the Assignment of Lease; and (vi) LENDER may exercise its rights pursuant to the Power of Attorney granted under Section 1.9 above. All rights, powers and remedies of LENDER in connection with the Transaction Documents may be exercised at any time by LENDER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity. Borrower and Guarantor acknowledge and agree that there may be no adequate remedy at law with respect to a breach of the Transaction Documents. Accordingly, Borrower and Guarantor agree that LENDER shall have the right, in addition to any other rights and remedies existing in LENDER'S favor at law or in equity, to enforce LENDER'S rights and obligations under the Transaction Documents not only by an action or actions for damages, but also for an action or actions for specific performance, injunctive and/or other equitable relief without posting of a bond or other security. To the extent authorized by applicable law, Borrower and Guarantor hereby agree to toll or waive any relevant statute of limitations in respect of any claims arising under, and/or relating to the Transaction Documents. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

3.3 **COSTS.** Borrower and Guarantor shall pay to LENDER all reasonable costs associated with (a) a breach by Borrower or Guarantor of the representations, warranties and covenants in the Transaction Documents, and the enforcement thereof, and (b) the enforcement of LENDER's remedies set forth in Section 3.2 above, including but not limited to (i) court costs (ii) attorneys' fees of twenty-five percent (25%) of the total balance due or the actual attorney fees incurred, whichever is greater; and (iii) default interest of 10% from the date of default or such other amount as allowed by law.

3.4 **REQUIRED NOTIFICATIONS.** Borrower and Guarantor are required to give LENDER fourteen (14) days prior written notice of: (a) any change in control of the Borrower or the sale, transfer or assignment of all or substantially all of the Borrower's assets or equity interests; and (b) the suspension, dissolution or termination of its business.

3.5 **SERVICE AND DEFAULT FEES.** Borrower shall pay certain fees for services related to the origination and servicing of the loan as detailed in the Loan Summary. Upon the occurrence of any

Event of Default, Borrower and Guarantor shall be liable to LENDER for a default fee in the amount stated in the Loan Summary, payable on demand in addition to any other fees or charges due under the Transaction Documents.

**IV. MISCELLANEOUS**

4.1 **MODIFICATIONS; AGREEMENTS.** No modification, amendment, waiver or consent of any provision of the Transaction Documents shall be effective unless the same shall be in writing and signed by LENDER. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.2 **LENDER ACTING AS AGENT.** LENDER has entered into the Transaction Documents as agent (in such capacity, "Agent") for itself and one or more third parties as "co-lenders" (each a "Principal"). Agent and each Principal have elected to treat the transaction consummated under the Transaction Documents (the "Transaction") as a single transaction on behalf of separate Principals, and Agent hereby certifies that the portion of the Transaction allocable to the account of each of the Principals for which it is acting as Agent (to the extent that any such Transaction is allocable to the account of more than one Principal) is set forth in one or more addenda to the Transaction Documents, which may be provided to Borrower upon request, shall be subject to this Section 4.2 as detailed below.

All references to "LENDER" or "Borrower" or "Guarantor(s)," as the case may be, in the Transaction Documents shall be subject to the provisions of this Section 4.2 and shall be construed to reflect that (i) each Principal shall have, in connection with the Transaction entered into by the Agent on its behalf, all of the rights, responsibilities, privileges and obligations of a "LENDER" directly entering into such Transaction with the other parties under each of the Transaction Documents and (ii) Agent's Principals have designated Agent (acting through the Authorized Subservicing Agent) as their sole agent for performance of LENDER'S obligations to Borrower and for receipt of performance by Borrower of its obligations to LENDER in connection with the Transaction (including, among other things, as Agent for each Principal in connection with transfers of cash or other property and as agent for giving and receiving all notices under the Transaction Documents), either directly or indirectly. Both Agent and its Principals shall be deemed "parties" to the Transaction Documents and all references to a "party" or "either party" in any Transaction Document shall be deemed revised accordingly.

The parties hereto acknowledge and agree that any assignment, pledge and/or grant to LENDER by the Borrower or a Guarantor of a security interest in and to any property and assets pursuant to any of the applicable Transaction Documents to secure the payment and/or performance of any of their respective and/or joint obligations, shall be deemed to have been made to the LENDER for and on behalf of itself and any other Principal. LENDER hereby agrees to hold all Collateral and Additional Collateral hereafter delivered to it pursuant to the Transaction Documents, for itself and for the benefit of the Principals, on and subject to the terms and conditions set forth in the Transaction Documents. In its capacity, the Agent and Sub-Servicing Agent is a "representative" of each of the Principals within the meaning of the term "secured party" as defined in the UCC. In addition to the representations and warranties set forth in the Transaction Documents, Agent hereby makes the following representations and warranties, which shall continue during the term of any Transaction: Principal has duly authorized Agent to execute and deliver the Transaction Documents on its behalf, has the power to so authorize Agent and to enter into the Transaction. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.3 **SUB-SERVICING AGENT.** LENDER may contract with one or more general agents to service the Transaction Documents (the "Sub-Servicing Agent") that will provide customer service, treasury, administrative, bookkeeping, reporting, collections, and support services, including, but not limited to, background checks, credit checks, general underwriting review, filing UCC-1 security interests and any other UCC documentation, for the LENDER. Borrower and Guarantor acknowledge and agree that LENDER has granted the Sub-Servicing Agent all rights and authority as its general agent to take any and all actions to enforce the Transaction Documents through legal actions in the name of the LENDER or otherwise, and to assert and/or defend against any and all claims arising from or relating to the Transaction Documents. Any and all authorizations and rights granted to LENDER under the Transaction Documents are hereby granted to Sub-Servicing Agent, as servicer and general agent of LENDER. In no event will the Sub-Servicing Agent be liable for any claims made against the LENDER or under any legal theory for lost profits, lost revenues, lost business opportunity, exemplary, punitive, actual, special, incidental, indirect or consequential damages, each of which is waived by the Borrower and Guarantor(s). This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.4 **NOTICES.** All notices, requests, consent, demands and other communications under the Transaction Documents and any addendum shall be delivered by ordinary mail to the respective parties at the addresses set forth on Page 1 of this Agreement and shall become effective upon delivery. The Parties hereto may also send such notices, requests, consent, demands and other communications via facsimile or electronic mail at such numbers and email addresses communicated by the parties hereto in writing or as reflected in the records of the Sub-Servicing Agent. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.5 **COUNTERPARTS; ELECTRONIC SIGNATURES.** Each of the Transaction Documents may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original of each such Transaction Document, and all such counterparts for the respective Transaction Document shall constitute one and the same such Transaction Document. For purposes of the execution of each of the Transaction Documents, electronically transmitted PDFs, facsimile copies of signatures, or electronically transmitted copies of signatures complying with the US Federal ESIGN Act of 2000 (e.g. www.docusign.com) shall be treated as original signatures for all purposes. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.6 **WAIVER OF REMEDIES.** No failure on the part of LENDER to exercise, and no delay in exercising, any right under the Transaction Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right under the Transaction Documents preclude any other or further exercise thereof or the exercise of any other right. The remedies provided under the Transaction Documents are cumulative and not exclusive of any remedies provided by law or equity. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.7 **SOLICITATIONS.** Borrower and Guarantor authorize the LENDER PARTIES to communicate with, solicit and/or market to Borrower and Guarantor via regular mail, telephone, electronic mail and facsimile in connection with the provision of goods or services by the LENDER PARTIES, its affiliates or any third party that THE LENDER PARTIES share, transfer, exchange, disclose or provide information with and will hold the LENDER PARTIES harmless against any and all claims pursuant to the federal CAN-SPAM ACT of 2003 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003), the Telephone Consumer Protection Act (TCPA), and any and all other state or federal laws relating to transmissions or solicitations by and any of the methods described above. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.8 **<u>SURVIVAL OF REPRESENTATION, ETC.</u>** Except as otherwise provided herein, all representations, warranties and covenants herein, including those in the Security Agreement and the Guaranty shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated. Notwithstanding any terms to the contrary contained herein: (i) the Security Agreement and the Guaranty shall survive, in their entirety, the repayment of the Repayment Amount and the termination of this Agreement; and (ii) in the event that LENDER must return any amount paid by Borrower, Guarantor, any other guarantor, entity or person with respect to the obligations arising under the Transaction Documents, including without limitation, arising from or relating to, Borrower, Guarantor, any other guarantor, entity or person becoming subject to a proceeding under the United States Bankruptcy Code or any similar law (whether arising under Federal or State law), and/or any other legal proceeding or alternative dispute resolution proceeding, all representations, warranties and covenants and other obligations under the Transaction Documents and any addendum thereof (if any) shall remain in full force and effect and Borrower and Guarantor shall be obligated for any such amounts repaid, as well attorneys' fees, costs and interest in connection with such proceeding. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.9 **<u>SEVERABILITY; SAVINGS.</u>** In case any of the provisions in the Transaction Documents are found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained therein shall not in any way be affected or impaired and the Transaction Documents shall be construed as if such provision had not been included. In no event shall the aggregate amount of interest charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that LENDER has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and LENDER shall promptly refund to Borrower any interest received by LENDER that is found to be in excess of the maximum lawful rate. If any provisions of this Agreement are in conflict with any other agreement to which any parties are subject, the provisions hereof shall control. Should any provision of the Transaction Documents require judicial interpretation, the court interpreting or construing the provision shall not apply the rule of construction that a document is to be construed more strictly against one Party. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.10 **<u>ENTIRE AGREEMENT.</u>** The Transaction Documents embody the entire agreement between Borrower, Guarantor and LENDER and supersede all prior agreements and understandings relating to the subject matter hereof. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

4.11 **<u>JURY TRIAL WAIVER.</u>** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTION DOCUMENTS OR THE ENFORCEMENT THEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS. THIS PROVISION SHALL SURVIVE, IN ITS ENTIRETY, THE REPAYMENT OF THE REPAYMENT AMOUNT AND THE TERMINATION OF THIS AGREEMENT.

4.12 **<u>CLASS ACTION WAIVER.</u>** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST ANOTHER PARTY, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THE TRANSCATION DOCUMENTS); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION. THIS PROVISION SHALL SURVIVE, IN ITS ENTIRETY, THE REPAYMENT OF THE REPAYMENT AMOUNT AND THE TERMINATION OF THIS AGREEMENT.

4.13 **<u>SUCCESSORS; ASSIGNS; AMENDMENT.</u>** The Transaction Documents shall be binding upon and inure to the benefit of the heirs, executors, trustees, administrators, legal representatives, successors, transferees and assigns of the Parties. The Transaction Documents shall not be assignable or otherwise transferrable by Borrower or Guarantor without LENDER'S prior written consent to be exercised solely in LENDER'S discretion. LENDER may assign or otherwise transfer the Transaction Documents. This provision shall survive, in its entirety, the repayment of the Repayment Amount and the termination of this Agreement.

**4.14 <u>ARBITRATION.</u>** ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*** **A SEPARATE AGREEMENT BETWEEN THE PARTIES PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT.**

**SIGNATURES ON NEXT PAGE**

2500 Wilson Boulevard, Suite 350, Arlington, Virginia 22201; Tel. 844-547-9396

**Contract# 22260821**

Borrower and Guarantor acknowledge that by signing below, Borrower and Guarantor agree to be bound by the terms, definitions, conditions and information in this Loan Agreement.

THE TERMS, DEFINITIONS, CONDITIONS, AND INFORMATION SET FORTH IN THE "LOAN SUMMARY", "SECURITY AGREEMENT", AND THE "GUARANTY" (AS APPLICABLE) ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS LOAN AGREEMENT. CAPITALIZED TERMS NOT DEFINED IN THIS LOAN AGREEMENT, SHALL HAVE THE MEANING SET FORTH IN THE "LOAN SUMMARY," "SECURITY AGREEMENT" OR "GUARANTY," AS APPLICABLE.

**BORROWER**

By Raja Mohiuddin, Owner (Print Name and Title)

DocuSigned by: 02F0C337BCDC4AF... (Signature)

**GUARANTOR**

By Raja Mohiuddin (Print Name)

DocuSigned by: 02F0C337BCDC4AF... (Signature)

**GUARANTOR**

By N/A (Print Name)

(Signature)

**GUARANTOR**

By N/A (Print Name)

(Signature)

USE OF PROCEEDS CERTIFICATION

*This Use of Proceeds Certification is part of (and incorporated by reference into) the Loan Agreement. All parties should retain a copy of this document for their records.*

Each signatory below, on behalf of each Borrower or Guarantor, hereby certifies the following to the LENDER

**I.** The entirety of the loan will be used in the ordinary course of business.

**II.** The entirety of the loan will be used exclusively for a Business Purpose and no other. A Business Purpose as applied to use of proceeds obtained under this Loan Agreement, refers solely to the purchase and acquisition of specific products or services used for the following purposes only: (i) working capital, (ii) business insurance (but not self-insurance programs), (iii) franchise fees, (iv) employee training, (v) the purchase of equipment, (vi) inventory, (vii) business supplies and raw materials, and (viii) the construction, renovation or improvement of facilities (but not the purchase of real estate). Business Purpose does not include: (a) payment for, or purchase of, any items, goods, materials real property, personal property or services for personal, individual or household use; or (b) use of funds for any proceeding under the United States Bankruptcy Code or any similar law (whether arising under Federal or State law) and/or any other legal proceeding or alternative dispute resolution proceeding.

**BORROWER**

By Raja Mohiuddin, Owner (Print Name and Title)

DocuSigned by: 02F0C337BCDC4AF... (Signature)

**GUARANTOR**

By Raja Mohiuddin (Print Name)

DocuSigned by: 02F0C337BCDC4AF... (Signature)

**GUARANTOR**

By N/A (Print Name)

(Signature)

**GUARANTOR**

By N/A (Print Name)

(Signature)

2500 Wilson Boulevard, Suite 350, Arlington, Virginia 22201; Tel. 844-547-9396

**Contract# 22260821**

# SECURITY AGREEMENT

**SECURITY INTEREST**. To secure Borrower's payment and performance obligations to Lender under the Transaction Documents, Borrower hereby grants to Lender a security interest in: (i) all accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Borrower arising out of goods sold or leased or for services rendered by Borrower, the proceeds thereof and all of Borrower's rights with respect to any goods represented thereby, whether or not delivered, goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together with all customer lists, books and records, ledger and account cards, computer tapes, software, disks, printouts and records, whether now in existence or hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"); (ii) all inventory, including without limitation, all goods manufactured or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials, and all supplies, goods, incidentals, office supplies, packaging materials and any and all items used or consumed in the operation of the business of Borrower or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which Borrower now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Borrower or is held by Borrower or by others for Borrower's account (collectively referred to hereinafter as "Inventory"); (iii) goods, including without limitation, all machinery, equipment, parts, supplies, apparatus, appliances, tools, fittings, furniture, furnishings, fixtures and articles of tangible personal property of every description now or hereafter owned by the Borrower or in which Borrower may have or may hereafter acquire any interest, at any location (collectively referred to hereinafter as "Equipment"); (iv) general intangibles in which the Borrower now has or hereafter acquires any rights, including but not limited to, causes of action, corporate or business records, inventions, designs, patents, patent applications, trademarks, trademark registrations and applications therefor, goodwill, trade names, trade secrets, trade processes, copyrights, copyright registrations and applications therefor, licenses, permits, franchises, customer lists, computer programs, all claims under guaranties, tax refund claims, rights and claims against carriers and shippers, leases, claims under insurance policies, all rights to indemnification and all other intangible personal property and intellectual property of every kind and nature (collectively referred to hereinafter as "Intangibles"); (v) all the capital stock, bonds, notes, partnership interests, member interests in limited liability companies, and other securities, if any, held of record or beneficially by the Borrower, including without limitation the capital stock of all subsidiaries of the Borrower, and the Borrower's interests in all securities brokerage accounts (collectively referred to hereinafter as "Investments"); (vi) all cash on hand and on deposit in banks, trust companies and similar institutions, and all property accounted for in the Borrower's financial statements as "cash equivalents" (collectively referred to hereinafter as "Cash"); (vii) all other assets, proceeds and items not directly referred to herein as those terms are defined in Article 9 of the Uniform Commercial Code under applicable federal and state law (collectively referred to hereinafter as "UCC Article 9 Items"); (viii) all accessions to, substitutions for, and all replacements, products and proceeds of the Receivables, Inventory, Equipment, Intangibles, Investments, Cash and UCC Article 9 Items (collectively referred to hereinafter as "Collateral"), including without limitation proceeds of insurance policies insuring the Collateral; and (ix) books and records relating to any of the Collateral (including without limitation, customer data, credit files, computer programs, printouts, and other computer materials and records of the Borrower pertaining to any of the Collateral), whether now or hereafter owned or acquired by Borrower and wherever located; and all proceeds of the foregoing. If the Transaction Documents or any addenda identify more than one Borrower, this Security Agreement applies to each Borrower, jointly and severally.

Borrower and Guarantor acknowledge and agree that any security interest granted to Lender under any other agreement between Borrower and Lender will secure the obligations hereunder, and that the Borrower's obligations

2500 Wilson Boulevard, Suite 350, Arlington, Virginia 22201; Tel. 844-547-9396



secured by this Security Agreement, and the Collateral granted hereunder, shall be perfected under any previously filed UCC-1 or UCC-3 statement, perfecting Lender's interest in the Collateral.

Borrower and Guarantor further acknowledge and agree that if, in the future, Borrower enters into any agreement with Lender, any security interest granted to Lender under such future agreements will relate back to this Security Agreement, and that the Borrower and/or Guarantor's obligations, and the Collateral granted, under such future agreements, shall relate back to, be perfected under, and made a part of, any previously filed UCC-1 or UCC-3 statement, perfecting Lender's interest in the Collateral.

**CROSS-COLLATERAL**. To secure the payment and performance obligations to the Lender under the Loan Agreement, Borrower and each Guarantor hereby grants Lender a security interest in all assets and equity interests in the following collateral **: N/A** (the "Additional Collateral"). Borrower and each Guarantor understands that Lender will have a security interest in the aforesaid Additional Collateral upon execution of this Security Agreement.

Each of Borrower and each Guarantor acknowledges and agrees that any security interest granted to Lender under any other agreement between Borrower and/or Guarantor and Lender will secure the obligations hereunder, and that the Borrower and/or Guarantor's payment and performance obligations under the Loan Agreement, and secured by this Security Agreement, and the Collateral and Additional Collateral granted hereunder, shall be perfected under any previously filed UCC-1 or UCC-3 statement, perfecting Lender's interest in the Collateral and Additional Collateral.

Each of Borrower and each Guarantor further acknowledges and agrees that, if Borrower and/or Guarantor enter into future agreements with Lender, any security interest granted to Lender under such future agreements will relate back to this Security Agreement, and that the Borrower and/or Guarantor's obligations, and the Collateral and Additional Collateral granted, under any such future agreements, shall relate back to, be perfected under, and made a part of, any previously filed UCC-1 or UCC-3 statement, perfecting Lender's interest in the Collateral and Additional Collateral.

Each of Borrower and each Guarantor agree to execute any documents or take any action in connection with this Security Agreement as Lender deems necessary to carry out the purpose of such agreements including, without limitation, to perfect or maintain Lender's security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Each of Borrower and each Guarantor hereby authorizes Lender to file any financing statements deemed necessary by Lender to perfect or maintain Lender's security interest, which financing statement may contain notification that Borrower and Guarantor have granted a negative pledge to Lender with respect to the Collateral and the Additional Collateral, and that any subsequent lender or lienor may be tortiously interfering with Lender's rights. Each Borrower and each Guarantor shall be jointly and severally liable for and shall pay to Lender upon demand all costs and expenses, including but not limited to attorney's fees and costs, which may be incurred by Lender in protecting, preserving and enforcing Lender's security interest and rights.

**NEGATIVE PLEDGE.** Borrower and each Guarantor agrees not to create, incur, assume, or permit to exist, directly or indirectly, any additional financings, loans, lien or other encumbrance of any kind with respect to any of the Collateral or the Additional Collateral, as applicable, without the prior written permission of Lender.

**CERTIFICATED COLLATERAL.** If any of the Collateral and/or Additional Collateral is now or in the future evidenced or represented by a certificate or certificates, each Borrower and each Guarantor shall immediately, and without the

need to be notified, deliver such certificate(s) to Lender, duly endorsed in a manner satisfactory to Lender, to be held as Collateral and/or Additional Collateral pursuant to this Security Agreement.

**CONSENT TO ENTER PREMISES AND ASSIGN LEASE**. Lender shall have the right to cure Borrower's default in the payment of rent for the Premises on the following terms: In the event Borrower or Guarantor are served with papers in an action against Borrower for nonpayment of rent or for summary eviction, Borrower or Guarantor shall promptly provide Lender with such papers and Lender may execute its rights and remedies under the Assignment of Lease pursuant to Section 2.12 of the Loan Agreement. Borrower also agrees that Lender may enter into an agreement with Borrower's landlord giving Lender the right to: (a) enter Borrower's Premises and to take possession of the fixtures, equipment and other Collateral therein for the purpose of protecting and preserving same; and (b) to assign Borrower's lease to another qualified Borrower capable of operating a business comparable to Borrower's at such Premises.

**REMEDIES**. Upon any Event of Default, Lender may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "LOAN SUMMARY", "LOAN AGREEMENT", AND THE "GUARANTY" (AS APPLICABLE) ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT, SHALL HAVE THE MEANING SET FORTH IN THE "LOAN SUMMARY," "LOAN AGREEMENT" OR "GUARANTY," AS APPLICABLE.

**BORROWER**

By Raja Mohiuddin, Owner (Print Name and Title) — DocuSigned by: 02F0C337BCDC4AF... (Signature)

**GUARANTOR**

By Raja Mohiuddin (Print Name) — DocuSigned by: 02F0C337BCDC4AF... (Signature)

**GUARANTOR**

By N/A (Print Name) — (Signature)

**GUARANTOR**

By N/A (Print Name) — (Signature)

2500 Wilson Boulevard, Suite 350, Arlington, Virginia 22201; Tel. 844-547-9396

**Contract# 22260821**

# GUARANTY

**PERSONAL GUARANTY**. Guarantor hereby unconditionally guarantees to Lender the Borrower's payment and performance of all of the obligations of, and representations, warranties, and covenants made by, Borrower in the Transaction Documents, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). The Guaranteed Obligations are due (i) at the time of any breach and/or Event of Default by Borrower of any of the obligations and covenants in the Transaction Documents; (ii) at the time Borrower or Guarantor admits its inability to pay its debts, or makes a general assignment for the benefit of creditors; (iii) at the time any proceeding shall be instituted by or against Borrower or Guarantor seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts (as applicable); and/or (iv) at the time any receivership proceeding shall be instituted by or against Borrower or Guarantor.

**GUARANTOR WAIVERS**. In the event that Borrower fails to make a payment or perform any obligation or covenant under the Transaction Documents, Lender may enforce its rights under this Guaranty or any of the other Transaction Documents without first seeking to obtain payment from the Borrower, any other guarantor, or through the Security Agreement.

Lender does not have to notify Guarantor of any of the following events, and Guarantor will not be released from its obligations under this Guaranty, if it is not notified of: (i) Borrower's failure to pay timely any amount owed under the Loan Agreement; (ii) any material or adverse change in Borrower's financial condition or business operations; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations, including all collateral listed in the Security Agreement, or any other guarantee of the Guaranteed Obligations; (iv) Lender's acceptance of this Guaranty; (v) any renewal, extension or other modification of any of the Transaction Documents and/or Borrower's other obligations to Lender; and (vi) the Lender's pursuit and/or enforcement of any rights and remedies, available at law and in equity, relating to, and/or arising from, the Transaction Documents.

In addition, Lender may take any of the following actions without releasing Guarantor from any of its obligations under this Guaranty: (i) renew, extend or otherwise modify any of the Transaction Documents or Borrower's other obligations to Lender; (ii) release Borrower from its obligations to Lender; (iii) sell, release, impair, waive or otherwise fail to realize upon, any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Guaranty; and (v) pursuit and/or enforcement of any rights and remedies, available at law and in equity, relating to, and/or arising from, the Transaction Documents. Until all of Borrower's obligations to Lender under any of the Transaction Documents are paid in full, Guarantor shall not seek reimbursement from Borrower or any other guarantor for any amounts paid by Guarantor under any of the Transaction Documents.

Guarantor permanently waives and shall not seek to exercise the following rights that Guarantor may have against Borrower, any other guarantor or third party, any collateral, or any other real or personal property for any amounts paid by Guarantor, any other guarantor, or third party, or acts performed by Guarantor, any other guarantor, or third party, under the Transaction Documents including, without limitation: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that Lender must return any amount paid by Borrower, any guarantor, entity, or person with respect to the Guaranteed Obligations, including, without limitation, any Borrower, guarantor, entity or person becoming subject to a proceeding under the United States

2500 Wilson Boulevard, Suite 350, Arlington, Virginia 22201; Tel. 844-547-9396

**Contract# 22260821**

Bankruptcy Code or any similar law, (whether arising under Federal or State law), and/or any other Insolvency Proceeding, legal proceeding or alternative dispute resolution proceeding, the Guaranteed Obligations under this Guaranty shall remain in full force and effect and Guarantor shall be obligated for any such amounts repaid as well as attorneys' fees, costs, and interest in connection with such proceeding.

**GUARANTOR ACKNOWLEDGEMENT**. Guarantor acknowledges that: (i) he/she understands the seriousness of the provisions of this Guaranty; (ii) he/she has had a full opportunity to consult with counsel of his/her choice; and (iii) he/she has consulted with counsel of his/her choice or has decided not to avail himself/herself of that opportunity.

**JOINT AND SEVERAL LIABILITY**. The obligations hereunder of the persons or entities constituting Guarantor under this Guaranty are joint and several.

## CONSENT TO RECEIVE AUTODIALED AND PRERECORDED CALLS AND MESSAGES

LENDER, Kapitus Servicing and their subsidiaries and affiliates (collectively, "KAPITUS") may from time to time notify applicant(s) of various promotional offers and other marketing information, or contact Borrower(s) and Guarantor(s) in connection with the servicing of the Transaction Documents, or in connection with any default under the Transaction Documents. By signing this Agreement, Borrower(s) and Guarantor(s) expressly consent and authorize KAPITUS to call, send text messages, and/or send other electronic messages (including prerecorded or artificial voice messages) using an automatic telephone dialing system to any telephone number provided by Borrower(s) or Guarantor(s) in the Transaction Documents, any and all applications or any administrative form or other means, including cellular phone numbers and landlines, regardless of their inclusion on any do not call list, for purposes of servicing, collections, marketing or promoting any product offered by KAPITUS. Borrower(s) and Guarantor(s) further expressly consent and authorize KAPITUS to record all calls with KAPITUS. Please note that you are not required to consent to be called for marketing or promotional purposes in order to qualify for financing or obtain any other products or services from KAPITUS. If you do not agree to be called for marketing or promotional purposes, please call (844) 547-9396 or email DNC@kapitus.com.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN "LOAN SUMMARY", "LOAN AGREEMENT", AND THE "SECURITY AGREEMENT" (AS APPLICABLE) ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTY SHALL HAVE THE MEANING SET FORTH IN THE "LOAN SUMMARY," "LOAN AGREEMENT" OR "SECURITY AGREEMENT," AS APPLICABLE.

**GUARANTOR**
By Raja Mohiuddin (Print Name)

DocuSigned by:

02F0C337BCDC4AF... (Signature)

**GUARANTOR**
By N/A (Print Name)

(Signature)

**GUARANTOR**
By N/A (Print Name)

(Signature)

2500 Wilson Boulevard, Suite 350, Arlington, Virginia 22201; Tel. 844-547-9396

# AGREEMENT TO ARBITRATE

***PLEASE READ THIS AGREEMENT CAREFULLY.*** **THIS AGREEMENT TO ARBITRATE ("AGREEMENT") PROVIDES THAT DISPUTES BETWEEN STRATEGIC FUNDING SOURCE, INC. D/B/A KAPITUS AND ITS SUBSIDIARIES AND AFFILIATES, INCLUDING BUT NOT LIMITED TO KAPITUS LLC AND KAPITUS SERVICING, INC. (COLLECTIVELY, "KAPITUS"), ON ONE HAND, AND RAJA M. DIN, M.D. PLLC, D/B/A RAJA M DIN MD AND RAJA MOHIUDDIN, (COLLECTIVELY, "YOU" OR "MERCHANT") (EACH A "PARTY" AND TOGETHER WITH KAPITUS, "THE PARTIES") MAY BE RESOLVED BY BINDING ARBITRATION.**

**ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS AGREEMENT IS GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA"), AND SHALL BE INTERPRETED IN THE BROADEST WAY THAT LAW WILL ALLOW.**

## I. Covered Claims.

**a.** You or Kapitus may arbitrate any claim, dispute or controversy between the Parties arising out of and/or related to: (i) this Agreement; (ii) any other agreement between the Parties; and/or (iii) the relationship between the Parties, whether or not related to a contract between them ("Claims").

**b.** **If arbitration is chosen by any Party in accordance with Section III below, no Party will have the right to litigate the Claims in court or to have a jury trial on the Claims.**

**c.** Except as stated below, all Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, Merchant's or Kapitus's negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with Kapitus or Merchant or claiming through Kapitus or Merchant, or by someone making a claim through Kapitus or Merchant, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company. Threshold issues of whether any claim is arbitrable also are subject to arbitration in accordance with this Agreement.

## II. Arbitration Limits.

**a.** Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any Party, neither Merchant nor Kapitus may pursue a Claim as part of a class action or other representative action.

**b.** Claims of two or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates or entities under common ownership or control of a Party are deemed one person for purposes of this Agreement.

**III. How Arbitration Works.**

**a.** Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA Commercial Arbitration Rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. Merchant can obtain copies of the AAA Rules at the AAA's website (www.adr.org). Merchant or Kapitus may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Notwithstanding any terms to the contrary, any in-person hearing will be held in Arlington, Virginia. The arbitration shall be conducted and the award shall be rendered in English.

**b.** Arbitration may be requested any time, even where there is a pending lawsuit, unless discovery has fully and finally concluded, and/or a final judgment entered. Neither Merchant nor Kapitus waives the right to arbitrate by filing or serving a complaint, answer, counterclaim, or motion in a lawsuit. To choose arbitration, a Party must file a motion to compel arbitration in a pending matter or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

**c.** The arbitration shall be conducted by a single arbitrator agreed to by the Parties within twenty (20) days of receipt by respondent of the request for arbitration (unless an extended time period is agreed to by the Parties). In the event the Parties are unable to agree upon the selection of the arbitrator, the arbitrator shall be selected in accordance with this arbitration provision and the AAA Rules for appointing an arbitrator from the AAA National Roster. The selected arbitrator may limit discovery. The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect account information and other confidential information of any Party if requested to do so. Except as may be required by law, neither a Party nor the arbitrator may disclose the existence, content or results of any arbitration without the prior written consent of both parties, unless to protect or pursue a legal right. The arbitrator shall apply the substantive laws of the jurisdiction specified in any contract between the parties. If no jurisdiction is specified or if multiple jurisdictions are specified in various contracts among the Parties, the substantive laws of the Commonwealth of Virginia shall apply, without regard to any applicable principals of conflicts of law.

**d.** The arbitrator shall make any award in writing and, if requested by Merchant or Kapitus, shall include a reasoned opinion for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

**e.** The arbitrator shall have no authority to award punitive damages, consequential damages, or other damages not measured by the prevailing Party's actual damages, except as required by statute or allowed under any agreement between the Parties.

**IV. Paying for Arbitration Fees.**

**a.** Arbitration fees will be allocated according to the applicable AAA Rules. All parties are responsible for their own attorney's fees, expert fees and any other expenses unless the arbitrator awards such fees or expenses to Kapitus based on a contract between the parties or applicable law.

**b.** The Parties agree that failure or refusal of a Party to pay its required share of the deposits for arbitrator compensation or administrative charges shall constitute a waiver by that Party to present evidence or cross-examine witnesses. In such event, the other Party shall be required to present evidence and legal argument as the arbitrator(s) may require for the making of an award. Such waiver shall not allow for a default judgment against the non-paying Party in the absence of evidence presented as provided for above.

**V. The Final Award.**

**a.** Any award rendered by the arbitrator shall be final, and binding on the Parties, and may be entered and enforced in any court having jurisdiction, and any court where a Party or its assets is located (to which jurisdiction the Parties consent for the purposes of enforcing such award) unless a Party appeals such award in writing to the AAA within 30 days of notice of the award pursuant to the AAA's Optional Appellate Arbitration Rules. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**VI. Miscellaneous.**

**a.** **<u>Survival.</u>** This Agreement shall survive: (i) termination of the account or the relationship between Merchant and Kapitus; (ii) repayment of any amounts owed by Merchant to Kapitus; (iii) the termination of any other agreement between Merchant and Kapitus; (iv), the filing of any petition or institution of any proceeding by or against any Party under any provisions of the Bankruptcy Reform Act, Title 11 of the United States Code, or any other similar law relating to bankruptcy, insolvency or other relief for debtors, or general affecting creditor's rights or seeking the appointment of a receiver, trustee, custodian, administrator or liquidator of or for any Party's assets; (v) any sale, transfer and/or assignment of Merchant's account with Kapitus, or amounts owed on Merchant's account, to another person or entity; (vi) the closure, suspension, dissolution or termination of Merchant's business; and (vi) the sale, transfer, and/or assignment of Merchant's business, any interest therein that constitutes a change of control in such business, and/or substantially all of Merchant's assets.

**b.** **<u>Severability.</u>** If any part of this Agreement is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration and/or litigation of a class or representative Claim.

**c.** **<u>Entire Agreement, Amendment, Successors, and Assigns.</u>** This Agreement contains the entire understanding among the Parties concerning the subject matter hereof. No representation, promise, statement of intention has been made by any Party concerning the subject matter hereof that is not embodied in this Agreement, and no Party shall be bound by, or liable for, any such alleged representation, promise or statement of intention not set forth herein. This Agreement may not be amended, modified, severed or waived, except through a written agreement between Merchant and Kapitus. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, trustees, administrators, representatives, receivers, liquidators, successors, transferees, and assigns of the Parties. This Agreement shall not be assignable or otherwise transferrable by Merchant without Kapitus's prior written consent to be exercised solely in Kapitus's discretion. Kapitus may assign or otherwise transfer this Agreement.

**d.** **<u>Counterparts; Electronic Signatures</u>**. This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one instrument. Electronically transmitted PDFs, facsimile copies of signatures, or electronically transmitted copies of signatures complying with the US Federal ESIGN Act of 2000 (e.g. www.docusign.com) shall be treated as original signatures for all purposes.

**e.** **<u>Authorization.</u>** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

f. **Waiver.** No failure on the part of Kapitus to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

g. **Further Assurances**. Each Party agrees to take all reasonable steps necessary to effectuate the terms of this Agreement. The Parties agree that they will take all actions, execute, and deliver any and all documents reasonably necessary to carry out the intent and purpose of this Agreement, including, without limitation any documents and fees necessary for the commencement and conduct of arbitration as set forth herein.

h. **No Interpretation of Captions or Headings**. The captions and headings within this Agreement are for ease of reference only and are not intended to create any substantive meaning or to modify the terms and clauses either following them or contained in any other provision of this Agreement

i. **Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to Kapitus at 2500 Wilson Boulevard, Suite, 350, Arlington, VA 22201, and to Merchant and/or Guarantor at the address(es) provided by Merchant or Guarantor to Kapitus and as reflected in Kapitus's system of record, and shall become effective only upon receipt. In addition, all notices, requests, consent, demands and other communications must be emailed to generalcounsel@kapitus.com and monareza@docgastro.com.

**MERCHANT**

By Raja Mohiuddin, Owner (Print Name and Title)

DocuSigned by: [signature] 02F0C337BCDC4AF... (Signature)

**KAPITUS**

By David Zullo (Company Officer)

David Zullo (Signature)

**GUARANTOR**

By Raja Mohiuddin (Print Name)

DocuSigned by: [signature] 02F0C337BCDC4AF... (Signature)

**GUARANTOR**

By N/A (Print Name)

___ (Signature)

**GUARANTOR**

By N/A (Print Name)

___ (Signature)